J-S23016-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| GLENNA L. NOVAK AND ESTATE OF JEFFERY LEONARD NOVAK, A/K/A ESTATE OF JEFFERY L. NOVAK BY AND THROUGH GLENNA L. NOVAK, EXECUTRIX | : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | : : | |
| v. | : : : : | No. 1592 MDA 2021 |
| MUTUAL BENEFIT INSURANCE COMPANY | : : : | |

Appeal from the Order Entered November 8, 2021
In the Court of Common Pleas of Dauphin County Civil Division at No(s):
2018-CV-01574-CV

BEFORE:   STABILE, J., McLAUGHLIN, J., and COLINS, J.[*]

MEMORANDUM BY McLAUGHLIN, J.:          **FILED OCTOBER 14, 2022**

Glenna L. Novak and the Estate of Jeffrey Leonard Novak (collectively "Appellants") appeal from the order granting summary judgment in favor of Mutual Benefit Insurance Company ("MBIC"). Appellants allege the trial court erred in finding their claims barred by the statute of limitations. We affirm.

According to Appellants' Complaint, in June 2011, Jeffrey Leonard Novak ("Decedent") was operating a motorcycle when a vehicle driven by Roy E. Wright made a left turn across Decedent's lane of travel, causing the motorcycle to strike the vehicle. Decedent was thrown from his motorcycle and sustained injuries, including severe head trauma, which resulted in death.

---

[*] Retired Senior Judge assigned to the Superior Court.

Appellants sought recovery from Wright, who had an insurance policy through Progressive Specialty Insurance Company ("PSIG"). Wright's policy had a bodily injury limit of $50,000, which PSIG tendered.

Appellants also submitted a claim for underinsured motorist ("UIM") coverage under Decedent's motorcycle policy ("motorcycle policy"). The motorcycle policy was issued by Progressive Advanced Insurance Company ("PAIC"). PAIC informed Appellants that Decedent had rejected UIM coverage. Appellants sued, contending the UIM rejection was ineffective, and they eventually reached an agreement to resolve the suit for $20,000.

Appellants' counsel wrote to MBIC, which had issued insurance on two of Appellants' other vehicles, a car and a truck, seeking consent to settle the two claims. In a letter dated October 3, 2012, MBIC stated the motorcycle that Decedent was driving at the time of the accident was not insured by MBIC. Therefore, MBIC explained, UIM coverage was not available under its policy and its consent was not required for settlement:

> The information provided to us indicates that [Decedent] was driving an owned motorcycle at the time of this accident, which was not insured with us. The underinsured motorist coverage under his personal auto policy would not be available based on this fact.
>
> . . .
>
> Therefore, [MBIC's] consent to any liability settlements is not necessary.

*Id.* at Exh. 22. The letter quoted an exclusion for UIM coverage:

**EXCLUSIONS**

A. We do not provide Underinsured Motorists Coverage for "bodily injury: sustained:

1. By you while "occupying", or when struck by, any motor vehicle you own which is not insured for this coverage. This includes a trailer of any type used with that vehicle.

2. By a "family member":

a. Who owns an auto, while "occupying", or when struck by, any motor vehicle owned by you or any "family member" which is not insured for this coverage under this policy. This includes a trailer of any type used with that vehicle.

b. Who does not own any auto, while "occupying", or when struck by, any motor vehicle you own which is insured for this coverage on a primary basis under any other policy.

*Id.*

After obtaining court approvals, PSIG later paid the $50,000 bodily injury limits in 2014. PAIC paid the $20,000 settlement August 2017.

Appellants then made a claim to MBIC for UIM coverage under the personal auto policy. In a January 2018 letter, MBIC denied UIM coverage, stating it had previously denied coverage in the October 2012 letter, when it explained that its consent was unnecessary for the settlements. Complaint at Exh. 20.

Appellants commenced this action in February 2018, by filing a writ of summons, and they filed a complaint in May 2019. They alleged breach of contract, sought a declaratory judgment, and requested damages for bad faith.

MBIC ultimately filed a motion for summary judgment arguing, in part, that Appellants' claims were barred by the statute of limitations. Appellants filed a cross-motion for partial summary judgment. The court heard argument and denied Appellants' motion and granted MBIC's motion. It reasoned Appellants did not commence their lawsuit within the four-year statute of limitations. Appellants filed a notice of appeal.

Appellants raise the following issues:

> 1. When determining whether the applicable four-year limitations period for a breach of contract action claiming for UIM coverage and benefits had lapsed, did the trial court err when it held that, as a matter of law, the meaning of the terms "claim" and "coverage" are indistinguishable under the holding in **Erie Ins. Exch. v. Bristol**, 643 Pa. 709, 174 A.3d 578 ( 2017) or, alternatively, the terms are not factually relevant and material to the events underlying [Appellants'] cause of action for breach of contract and the applicable four-year limitations period to timely file such action?
>
> 2. When determining whether the applicable four-year limitations period for a breach of contract action claiming for UIM coverage and benefits had lapsed, did the trial court err in holding that a denial of UIM coverage is not dependent upon, in the first instance, the existence of any pending request or claim by [Appellants] for such coverage or benefits?
>
> 3. When determining whether the applicable four-year limitations period for a breach of contract action claiming for UIM coverage and benefits had lapsed, did the trial court err when holding that while a denial of UIM coverage is not dependent upon any pending claim or request for coverage or benefits, a breach of a duty under the policy contract by the insurer had nevertheless occurred on a triggering date asserted by the insurer, even though the insurer had neither asserted in its pleading nor provided any evidence that [Appellants] had ever requested performance by the insurer

under the contract to provide them either UIM coverage or UIM benefits?

4. When determining whether the applicable four-year limitations period for a breach of contract action claiming for UIM coverage and benefits had lapsed, did the trial court err when it failed to determine whether and how the insurer breached the [Appellants'] family motor vehicle policy when the insurer sent the letter from which the trial court established the triggering date for the running of the limitations period and in light of insurer denying it ever breached any duty to [Appellants] under the policy contract?

5. When determining whether the applicable four-year limitations period for a breach of contract action claiming for underinsured motorist ("UIM") coverage and benefits had lapsed, did the trial court err in holding that the insurer's letter from which the trial court established the triggering date for the running of the limitations period constituted a denial of coverage, as a matter of law, rather than leaving to a jury to determine, as fact, whether the context, content, interpretation, and use of the letter should bar [Appellants'] contract action?

6. When determining whether the applicable four-year limitations period for a breach of contract action claiming for UIM coverage and benefits had lapsed, did the trial court err in finding that [Appellants'] counsel had admitted or conceded that the insurer's letter was a denial of a claim or a denial of coverage?

7. When determining whether the applicable four-year limitations period for a breach of contract action claiming for UIM coverage and benefits had lapsed, did the trial court err in failing to consider the import and application of the decision in *Clarke v. MMG Insurance Company*, 2017 PA Super. 192, 100 A.3d 271 (2014) on the timeliness of [Appellant's] UIM claims and whether [Appellants] are entitled to summary judgment on their breach of contract claim in the instant case?

Appellants' Br. at 5-6.

We review the grant of summary judgment for error of law and abuse of discretion. **See In re Risperdal Litig.**, 223 A.3d 633, 639 (Pa. 2019). "[S]ummary judgment is appropriate only in those cases where the record clearly demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." **Id.** (quoting **Atcovitz v. Gulph Mills Tennis Club, Inc.**, 812 A.2d 1218, 1221 (Pa. 2002)). "The trial court must take all facts of record and reasonable inferences therefrom in a light most favorable to the non-moving party" and "must resolve all doubts as to the existence of a genuine issue of material fact against the moving party." **Id.** The court "may only grant summary judgment 'where the right to such judgment is clear and free from all doubt.'" **Id.** (quoting **Summers v. CertainTeed Corp.**, 997 A.2d 1152, 1159 (Pa. 2010)).

Appellants argue the first three issues together, and therefore we will address them together. They maintain the accrual date for the action could not have occurred before August 2017, when they submitted a UIM claim to MBIC. They distinguish a denial of a "claim" from a denial of "coverage," and argue that under **Erie Insurance Exchange v. Bristol**, 174 A.3d 578 (Pa. 2017), the statute of limitations does not begin to run on a UIM claim until the insurance company denies a "claim." They maintain neither could have happened until Appellants submitted a claim for UIM coverage. Appellants contend that "[a]n unsolicited opinion or observation by an insurer that it may or may not have coverage applicable to a particular matter is different from an insurer processing a claim affirmatively stated and submitted by an insured

- 6 -

to the insurer for action and denying that insured the specific benefits claimed." Appellants' Br. at 21-22.

Pennsylvania law provides for a four-year statute of limitations on breach of contract actions and related declaratory judgment actions. **See** 42 Pa.C.S.A. § 5525(a)(8). In **Bristol**, Bristol was injured in a hit-and-run accident in the course of his employment, in 2005. He sought uninsured motorist ("UM") coverage under a fleet policy that afforded such coverage, subject to arbitration. The insurer issued a reservation of rights letter. After the parties each selected an arbitrator, and Bristol gave a statement, the proceedings stalled until the insurer filed a declaratory judgment action, in 2013, claiming the statute of limitations on Bristol's UM claim had expired.

The Pennsylvania Supreme Court disagreed that the statute had even begun to run. It stated at the beginning of its opinion that "the running of the statute [of limitations] is commenced upon an alleged breach of a contractual duty," which it explained "would be occasioned by the insurer's denial of coverage or refusal to arbitrate." 174 A.3d at 580. It reasoned that Section 5502 of the Judicial Code defines the method of computing periods of limitations and provides that "[t]he time within which a matter must be commenced under this chapter shall be computed . . . from the time the cause of action accrued[.]" **Id.** at 585 (quoting 42 Pa.C.S.A. § 5502(a)) (emphasis removed) (alterations in original). The Court then restated its holding, using a slightly different wording: "We conclude the proper circumstance to start the running of the limitation period is an alleged breach of the insurance

contract, which will be occasioned in this context by a denial of a claim or the refusal to arbitrate." **Id.** at 589.

Here, the trial court concluded the limitations period began to run when MBIC denied coverage in the October 2012 letter and therefore the current case, commenced in 2018, was barred by the statute of limitations:

> Based on our reading of **Bristol**, it does not appear that a claim must be made before the limitations period begins. Rather, the breach occurs as soon as the insurance company denies coverage for the subject accident. As such, we find that the limitations period begins once coverage is denied.
>
> In the instant matter, it cannot genuinely be disputed that [MBIC] denied coverage of the subject accident by letter dated October 3, 2012. Although [Appellants] had not yet made a claim under their [MBIC] Policy, a plain reading of the letter makes clear that [MBIC] is denying coverage for the subject accident. [Appellants'] counsel even admitted that he read the letter as a denial of coverage at the time that he received it. It wasn't until a case came out in 2014 that he started to think that the denial of coverage was improper. However, based on the language in **Bristol**, the limitations period started running on the date that [Appellants'] counsel received the denial of coverage. Thus, in order to file a timely breach of contract claim, [Appellants] should have filed their action no later than October 3, 2016, which they did not do. Therefore, [Appellants'] claims are untimely, and summary judgment should be entered in favor of [MBIC] on all claims.

Trial Court Opinion, filed Nov. 8, 2021, at 4.

The trial court did not err. Although the Supreme Court in **Bristol** used somewhat varying language, it is indisputable that it said that the statute begins to run upon the denial of coverage (as well as upon the denial of a claim or a refusal to arbitrate). Here, the denial of coverage occurred in

- 8 -

October 2012. Although Appellants had not yet submitted a claim to MBIC, the October 2012 letter regarding consent to settle said in plain language that pursuant to policy provisions, MBIC would not be affording Appellants UIM coverage. If Appellants disagreed with MBIC's interpretation of the policy, Appellants could have and should have taken steps to challenge the interpretation at that point. The trial court properly concluded that the statute of limitations began to run when Appellants received the October 2012 letter.

We next address Appellants' fourth and seventh claims together. In their fourth claim, Appellants argue the trial court erred because it "did not analyze or opine on the viability of any UIM claim by Appellants against [MBIC]." Appellants' Br. at 22. They argue the statute of limitations began to run when they had the right to institute and maintain a suit. They claim the first time they could maintain a suit would have been either August 22, 2017, when the UIM payment was received under the prior settlement from the insurer of the motorcycle, or January 28, 2018, when they received MBIC's letter denying the claim they submitted.

In the seventh issue, Appellants argue the court erred in failing to consider the import and application of **Clarke** on the timeliness of the claims. They argue that the reasoning advanced in the October 2012 letter was "actually correct on the face of the Policy and its terms," and that is why Appellants did not assert a UIM claim between 2011 and 2016. Appellants' Br. at 35-36. They argue, however, the "initial reasoning fundamentally changed" when this Court issued **Clarke**. **Id.** at 36. They claim they could not have

requested UIM coverage until they received payment under the motorcycle policy, which occurred in August 2017, because until then, they could not have demonstrated there was UIM coverage for the motorcycle, as the insurer of the motorcycle had contested UIM coverage. They conclude that before *Clarke*, "it was fairly assertable that UIM coverage was non-existent because the motorcycle was not an insured vehicle under [MBIC's] [p]olicy," but after *Clarke* "UIM coverage could be pursued if UIM coverage on the motorcycle could be demonstrated." *Id.* at 37-38.

In *Clarke*, this Court concluded that where a motorcycle had UIM coverage through a separate policy, an auto policy exclusion barring coverage for injury sustained in vehicles "not insured for this coverage" did not apply. 100 A.3d at 276. We reasoned the policy did not require that the insured maintain the UIM coverage under the insurance policy at issue. *Id.* at 277.

We do not agree that *Clarke* impacted the statute of limitations. Rather, if Appellants wanted to challenge MBIC's interpretation of the claim, as evidenced in the October 2012 letter, they could have commenced an action at that time, as the plaintiffs in *Clarke* did. A subsequent change in the law does not change an accrual date for the statute of limitations. Because the change in law did not impact the accrual date, the claim that Appellants could not have known the status of UIM coverage under the Progressive policy until the settlement is meritless. Moreover, Appellants provide no legal support for the claim that the statute of limitation could not start to run until they received payment from the other insurer. These claims fail.

In their fifth claim, Appellants argue the trial court erred in finding the October 2012 letter constituted a denial of coverage as a matter of law. They claim it was a factual issue, that the jury should have decided. They claim that the October 2012 letter was not an unambiguous denial of coverage. Rather, the letter to which it responded merely sought the consent of MBIC to settle claims Appellants had against others. Under the policy, Appellants had a duty to seek consent prior to the settlement. MBIC's response that it did not believe it had to consent to the settlement merely discharged Appellants from their duty to report settlements. Appellants claim reasonable minds can disagree as to the letter and therefore there were genuine issues of material fact that should have been submitted to a jury. They further note that MBIC did not "produce[] evidence that it believed there was UIM coverage available to [Appellants] in the first instance in order that it was available to be denied" in October 2012. Appellants Br. at 32 (emphasis omitted).[1]

This was not a factual issue for the jury. Rather, the October letter stated that UIM coverage is not available under the policy. Even Appellants' counsel admitted at argument below that when he received the letter, he read it as denying coverage:

_____

[1] Appellants further argue the testimony of Susan Romano, MBIC's corporate designee and the person who wrote the October 2012 letter, should not be sufficient to award summary judgment. However, the trial court did not rely on her testimony, and, regardless, we conclude that even without this testimony, there was no genuine issue of material fact that the claim accrued in October 2012.

[APPELLANTS' COUNSEL]: If you're asking me at that time, being candid to the Court, if you're asking me did I interpret [the October 2012 letter] as a denial of . . . coverage because the motorcycle was not covered under the family policy and, therefore, is not a covered vehicle, that would have been my interpretation at that time and I would have agreed with that under the reading of that exclusionary clause, his motorcycle was not.

N.T., 10/1/2021, at 18. Counsel argued that after *Clarke*, the denial was no longer correct. The relevant time, however, is the date of the issuance of the letter, not years later, when an allegedly applicable change in law occurs. Reasonable minds would not dispute that the 2012 letter was a denial of coverage, and there was no genuine issue of material fact.

Appellants next argue that the trial court erred in finding their counsel admitted or conceded that the October 2012 letter was a denial of a claim. They argue that the transcript reflects the position they have maintained throughout the case and did not concede it was a denial.

The trial court did not err. Counsel conceded that upon receipt of the letter in 2012, he interpreted the letter as a denial of coverage. N.T., 10/1/2021, at 18. That counsel has continually argued during this case that *Clarke* altered the legal landscape, and his interpretation of the applicable exclusion, does not change that fact that, in 2012, he interpreted the letter as a denial. The record supports the finding of a concession. The court did not err or abuse its discretion.

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/14/2022