**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 21-3095
_____

PHILIP MAURO, AS ASSIGNEE FOR DIAMOND CONTRACT FLOORING, LLC,
Appellant

v.

OHIO SECURITY INSURANCE COMPANY*

*(Amended in accordance with the Court's 10/11/2022 Order)
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2:20-cv-03319)
District Judge: Hon. Wendy Beetlestone
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
October 6, 2022

Before: HARDIMAN, SHWARTZ, and NYGAARD, *Circuit Judges*.

(Filed: October 18, 2022)

_____

OPINION[**]
_____

---

[**] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

HARDIMAN, *Circuit Judge*.

Philip Mauro appeals the District Court's summary judgment in favor of Ohio Security Insurance Company. We will affirm, essentially for the reasons stated by the District Court in its clear and concise opinion.[1]

## I

At issue is an insurance dispute regarding Ohio Security's denial of coverage under a policy (the Policy) it issued to Diamond Contract Flooring. Mauro became ill after he inhaled silica sand while working as a construction supervisor on a jobsite with Diamond at the Philadelphia Airport Marriott. After he was treated for chronic obstructive pulmonary disease, Mauro sued Diamond in state court, claiming Diamond's use of Novoplan Easy Plus to level the concrete floor caused his illness. Diamond sought coverage from Ohio Security, but it declined to defend, citing an exclusion (the Exclusion) in the Policy that precluded coverage for injury arising from the inhalation of "silica" or "silica-related dust." Diamond then assigned its rights under the Policy to Mauro, and after Mauro won a $375,000 award against Diamond, he sued for indemnification in state court.[2] Ohio Security removed the case to the District Court.

After discovery, Mauro and Ohio Security filed cross-motions for summary judgment. The main dispute involved a question of contract interpretation: whether silica

---

[1] The District Court exercised diversity jurisdiction under 28 U.S.C. § 1332. We have jurisdiction under 28 U.S.C. § 1291.

[2] Mauro originally sued Liberty Mutual Insurance Company. The parties have agreed to substitute Ohio Security as the proper Defendant.

sand—the only silica product listed on Novoplan's Safety Data Sheet—fell within the Exclusion. The District Court concluded it did, so it granted Ohio Security's motion. In its cogent opinion, the District Court found that the Exclusion applies to silica "as defined [in the Policy] according to its chemical formula, silicon[] dioxide, and including various manifestations of that chemical formula—crystalline, amorphous, or impure; particles, dust, and compounds." *Mauro v. Ohio Sec. Ins. Co.*, 2021 WL 5040265, at *3 (E.D. Pa. Oct. 29, 2021). And because silica sand is a form of crystalline silicon dioxide, Mauro's claim that he was injured from inhaling silica sand "[fell] unambiguously under the Silica Exclusion." *Id.* at 4. This timely appeal followed.

## II

Mauro claims the "only logical reading" of the Exclusion is that it applies to "silica dust or silica-related dust" and not other forms of silica (including silica sand). Mauro Br. 18. On his view, the Exclusion does not apply to his injuries caused by the silica sand in Novoplan. We disagree.

We interpret insurance policies "according to the plain meaning of the words involved," reading all provisions together to avoid ambiguity. *Post v. St. Paul Travelers Ins. Co.*, 691 F.3d 500, 517 (3d Cir. 2012) (quoting *Masters v. Celina Mut. Ins. Co.*, 224 A.2d 774, 776 (Pa. Super. Ct. 1966)). As relevant here, the Exclusion states:

This insurance does not apply to:

**Silica Or Silica-Related Dust**

a. "Bodily injury" arising, in whole or in part, out of the actual, alleged, threatened or suspected inhalation of, or ingestion of, "silica" or "silica-related dust".

3

App. 346. On the same page as the Exclusion, the Policy defines "silica" as "silicon dioxide (occurring in crystalline, amorphous and impure forms), silica particles, silica dust or silica compounds," and defines "silica-related dust" as "a mixture or combination of silica and other dust or particles." App. 346. So the Policy excludes coverage for Mauro's injuries if either definition covers silica sand.

The District Court properly held that the Exclusion unambiguously precludes coverage for Mauro's injuries arising from silica sand. First, Mauro's assertion that "silica" or "silica-related dust" really means "silica dust or silica-related dust" disregards the text of the Exclusion—"silica" and "silica-related dust" are each demarcated by quotation marks and defined separately. Second, silica sand is included within the Policy's definition of "silica." The Policy defines "silica" as "**silicon dioxide** (**occurring in crystalline**, amorphous and impure **forms**)." App. 346 (emphasis added). Mauro concedes that silica sand is a form of crystalline silicon dioxide.[3] So reviewing the record in the light most favorable to Mauro, *see Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 265 (3d Cir. 2014), the Exclusion bars coverage for injuries arising from inhalation of silica sand. Mauro's injuries are therefore excluded by the Policy.[4]

---

[3] Mauro admitted that both "silica sand and silica dust are forms of crystalline silica." App. 1175. Likewise, Mauro's expert testified that silica sand is a silicon dioxide chemical, App. 1111 at 11:5–11:7, and that crystalline quartz silica, silica sand, silica dust, and silicon dioxide are, "chemically," the "same substance." App. 1136 at 110:9–111:3.

[4] Mauro argues that OSHA's informational webpage on crystalline silica should influence interpretation of the Exclusion. We disagree. Parties to a private insurance contract need not mimic regulatory guidance. Moreover, the OSHA webpage is not a regulation at all—

Mauro also argues that the Exclusion must be interpreted to give effect to the "reasonable expectations" of the insured (Diamond). Diamond's president averred that he expected the Policy to cover injuries caused by silica sand because, if it did not, Diamond would shoulder liability "for virtually any activity involving the leveling of floors"—a "key component" of its business. App. 142. It is true that insurance contracts in Pennsylvania are generally interpreted in accordance with the "reasonable expectations of the insured." *Bubis v. Prudential Property & Cas. Ins. Co.*, 718 A.2d 1270, 1272 (Pa. Super. Ct. 1998) (quoting *Frain v. Keystone Ins. Co.*, 640 A.2d 1352, 1355 (Pa. Super. Ct. 1994)). But an insured "may not complain that his or her reasonable expectations were frustrated by policy limitations which are clear and unambiguous," *id.*, unless the insurer or its agent misrepresented the terms of the policy or issued a policy different from the one promised. *See West v. Lincoln Benefit Life Co.*, 509 F.3d 160, 169 (3d Cir. 2007). Mauro offered no evidence that Ohio Security misrepresented the scope of the Exclusion or promised materially different protections. And the reasonable expectations doctrine is ill-suited here because Diamond is a commercial entity that obtained the Policy through an insurance broker. *See, e.g.*, *Canal Ins. Co. v. Underwriters at Lloyd's London*, 435 F.3d 431, 440 (3d Cir. 2006) (explaining that the reasonable expectations

___

it is an explanatory Safety and Health Topic resource. And that resource supports the District Court's reading of the Exclusion, not Mauro's. OSHA explains that "**[i]ndustrial sand** used in certain operations" is "a source of respirable crystalline silica exposure," Dep't of Lab., *Silica, Crystalline*, https://www.osha.gov/silica-crystalline (last visited Sept. 27, 2022) (emphasis added)—calling into serious question Mauro's distinction regarding the risks posed by respirable crystalline silica versus silica sand. Mauro Br. 6–10.

doctrine applies only "in very limited circumstances to protect non-commercial insureds from policy terms not readily apparent and from insurer deception") (cleaned up).

In sum, because the Exclusion was clear and unambiguous, the reasonable expectations doctrine cannot vitiate the language of the Policy.

\*     \*     \*

For the reasons stated, we will affirm the order of the District Court.